IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Ralph J. Tortora, | ) |
|                     Plaintiff, | )   C.A. No. 6:15-2471-HMH |
| vs. | ) |
| | )   **OPINION & ORDER** |
| Hartford Life and Accident Insurance Company, | ) |
|                     Defendant. | ) |

This matter is before the court for review of the claim administrator's decision to deny long-term disability ("LTD") benefits to Ralph J. Tortora ("Tortora") under an LTD insurance policy ("Policy") governed by ERISA.[1] The Policy is insured and administered by Hartford Life and Accident Insurance Company ("Hartford"). Tortora seeks LTD benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g). (Joint Stipulation ("J.S.") ¶ 1, ECF No. 23.) The parties have filed a joint stipulation and memoranda in support of judgment pursuant to the court's Specialized Case Management Order for ERISA benefits cases. The parties agree that the court may dispose of this matter consistent with the joint stipulation and memoranda. (Id. ¶ 8, ECF No. 23.) The parties further agree that the court should resolve the following issues: (1) whether Hartford's claim decision was proper under the applicable standard of review and factors made relevant by Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353 (4th Cir. 2008); (2) if the claim decision was improper, whether benefits

---

[1] Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.

1

should be awarded pursuant to 29 U.S.C. § 1132(a)(1)(B), or whether the case should be remanded to Hartford for further evaluation of Tortora's claim; and (3) if remand is necessary, whether resolution of the issue of retroactive benefits and attorneys' fees should be deferred until after further evaluation is conducted. (J.S. ¶ 7, ECF No. 23.) For the reasons set forth below, the court remands the case to Hartford for further consideration.

## I. FACTUAL AND PROCEDURAL HISTORY

Tortora's claim arises under a group disability policy that was issued by Hartford to Tortora's former employer, Macro Plastic, Incorporated ("MPI"). (Compl. ¶ 4, ECF No. 1.) Tortora was employed by MPI as a sales and marketing manager until January 4, 2006, when he ceased working due to a back injury caused by a fall at home, which required a spinal fusion of T-10 to L-3. (Def. Mem. Supp. J. 4, ECF No. 27.) As an employee of MPI, Tortora was covered by the Policy as a participant in the employee benefits plan. (Id. at 1, ECF No. 27.) Under the employee benefits plan and the Policy, MPI vested Hartford with discretionary authority to interpret Policy terms and make benefit determinations. (Id., ECF No. 27.)

Tortora applied for LTD benefits on February 18, 2006. (J.S. Exs., ECF No. 24-15, AR 1117-22.) Hartford approved LTD benefits under the Policy and notified Tortora by letter dated March 21, 2006. (Id. Exs., ECF No. 24-16, AR 1266-68.) Between 2007 and 2014, Tortora completed several Claimant Questionnaire forms upon Hartford's request, in which he reported working as a part-time realtor fluctuating between ten to twelve or ten to fifteen hours per week. (Id. Exs., ECF No. 24-13, AR 898-900; Id. Exs., ECF No. 24-13, AR 879-81; Id. Exs., ECF No. 24-10, AR 532-34.) On October 2, 2014, Hartford denied Tortora continuing LTD benefits, finding that Tortora no longer had a "Disability" as that term is defined under the Policy. (Id.

Exs., ECF No. 24-16, AR 1145-50.)  The decision was upheld on appeal and became final on June 10, 2015.  (Id. Exs., ECF No. 24-16, AR 1129-32.)  Tortora alleges that he is disabled and that Hartford abused its discretion in terminating his LTD benefits.

The Policy provides in pertinent part as follows:

**When do benefits become payable?**
You will be paid a monthly benefit if:
1. you become Disabled while insured under this plan;
2. you are Disabled throughout the Elimination Period;
3. you remain Disabled beyond the Elimination Period;
4. you are, and have been during the Elimination Period, under the Regular Care of a Physician; and
5. you submit Proof of Loss satisfactory to us.

* * *

**When will benefit payments terminate?**
We will terminate benefit payment on the first to occur of:
1. the date you are no longer Disabled as defined;

* * *

**Any Occupation** means an occupation for which you are qualified by education, training or experience, and that has an earnings potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage and the Maximum Monthly Benefit shown in the Schedule of Insurance.

* * *

**Disability or Disabled** means that during the Elimination Period and for the next 24 months you are prevented by:
1. accidental bodily injury;
2. sickness;
3. Mental Illness;
4. Substance Abuse; or
5. pregnancy,

>   from performing one or more of the Essential Duties of Your Occupation, and as
>   a result your Current Monthly Earnings are no more than 80% of your Indexed
>   Pre-disability Earnings.
>
>   After that, you must be so prevented from performing one or more of the
>   Essential Duties of Any Occupation.

(J.S. Exs., ECF No. 24-20, AR 1461, 1462, 1470, 1471.)

Tortora filed the instant action on June 19, 2015. (Compl., ECF No. 1.) The parties submitted a joint stipulation on December 18, 2015. (J.S., ECF No. 23.) Tortora filed a motion in support of judgment on January 7, 2016. (Pl. Mem. Supp. J., ECF No. 26.) Hartford filed a memorandum in support of judgment on January 8, 2016. (Def. Mem. Supp. J., ECF No. 28.) On January 14, 2016, Hartford and Tortora replied. (Def. Reply, ECF No. 31; Pl. Reply, ECF No. 32.) This matter is now ripe for consideration.

## II. DISCUSSION OF THE LAW

### A. Standard of Review

"When . . . an ERISA benefit plan vests with the plan administrator the discretionary authority to make eligibility determinations for beneficiaries, a reviewing court evaluates the plan administrator's decision for abuse of discretion." Williams v. Metro. Life Ins. Co., 609 F.3d 622, 629-30 (4th Cir. 2010) (citations omitted). Employing this deferential standard, the court will not disturb the determination of the plan administrator if it is reasonable, even if the court, exercising independent judgment, would have reached an alternative decision. Donovan v. Eaton Corp., Long Term Disability Plan, 462 F.3d 321, 326 (4th Cir. 2006). A plan administrator's decision is reasonable, and will be upheld, if it is the product "of a deliberate, principled reasoning process and if it is supported by substantial evidence." Bernstein v.

CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995) (internal quotation marks and citation omitted).

The Fourth Circuit has enumerated eight nonexclusive factors that guide the court in reviewing the reasonableness of an administrator's decision. See Champion, 550 F.3d at 359. These factors include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Id. (quoting Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir. 2000)). "Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion . . . [and] consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 208 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966)), overruled by implication, on other grounds by, Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003).

### B. Denial of LTD Benefits

Tortora argues that Hartford abused its discretion in terminating his LTD benefits by: (1) failing to apply and consider the Policy's definitions; (2) failing to consider all relevant opinions and facts in the employability analysis report ("EAR"); (3) inappropriately relying on a statement by his treating physician that was signed using the treating physician's signature

stamp; (4) deciding without any evidence that Tortora had physically improved; (5) operating under an improper conflict of interest; and (6) ignoring the fact that Tortora could not physically perform or complete a functional capacity evaluation ("FCE"), and alternatively, failing to request a less strenuous independent medical evaluation ("IME").  (Pl. Mem. Supp. J., generally, ECF No. 26.)  For the reasons set forth below, the court remands the case to Hartford for further consideration.

### 1. Failure to Apply and Consider the Policy's Definitions

First, Tortora argues that Hartford abused its discretion in failing to apply and consider the Policy's definitions since neither the "hired peer reviewers [n]or the EAR considered the specific definition of 'disability' or performed any meaningful analysis of whether Tortora could do all . . . of the 'essential duties' of a particular job." (Id. at 16, ECF No. 26.)  Regarding the peer reviewers, Hartford counters that the "purpose of a peer review is not to make disability determination, but rather to collect independent evidence of a claimant's restrictions and limitation." (Def. Reply 7, ECF No. 31.)  Instead, it is the Hartford claims administrator that applies the Policy terms to the evidence in the record. (Id., ECF No. 31.)  In this case, a Hartford administrator compiled an EAR, which utilized an Occupational Access System ("OASYS")[2] to identify potential occupations based on the restrictions and limitations provided by the peer reviewers as well as Tortora's self-reported education, training, and work history. (Id., ECF No. 31.)

---

[2] OASYS is "a computerized job matching system that cross references an individual's qualifications profile with 12,741 occupations classified by the United States Department of Labor in the 1991 Dictionary of Occupational Titles (DOT)."  (J.S. Exs., ECF No. 24-9, AR 455.)

Hartford's reliance upon an EAR and a system like OASYS is an acceptable and reasonable procedure for applying Policy definitions to a particular record. See, e.g., Richey v. Hartford Life & Accident Ins. Co., 608 F. Supp. 2d 1306, 1312 (M.D. Fla. 2009); see also Campbell v. Hartford Life & Acc. Ins. Co., 766 F. Supp. 2d 661, 667-68 (D.S.C. 2011); Day v. Hartford Life Ins. Co., No. C/A 6:09-1041-HMH, 2009 WL 3617549, at *5 (D.S.C. Nov. 2, 2009) (unpublished). Further, based on the EAR and other evidence, Hartford's claim administrator explicitly used and applied the Policy definitions in the denial letter when it stated that Tortora was "not prevented from performing the essential duties of Any Occupation," and therefore Tortora did "not meet the policy definition of Disability." (J.S. Exs., ECF No. 24-16, AR 1149.) Taken together, sufficient evidence exists to establish that Hartford considered and applied the Policy definitions to the record evidence. Thus, the court finds that Hartford did not abuse its discretion on this issue.

## 2. Failure to Consider all Relevant Opinions and Facts

Second, Tortora argues the EAR "failed to consider all relevant opinions and facts." (Pl. Mem. Supp. J. 19-21, ECF No. 26.) Specifically, Tortora contends that Hartford "cherry pick[ed]" which restrictions and limitations to use because Hartford used its independent peer reviewer's restrictions and limitations to conduct the OASYS analysis rather than Tortora's treating physician's more significant restrictions and limitations. (Id. at 20-21, ECF No. 26.) However, it is well established that it is not an abuse of discretion for a plan administrator to deny benefits where conflicting medical reports exist. Elliott v. Sara Lee Corp., 190 F.3d 601, 606 (4th Cir. 1999). Further, it is also well established that deference to a treating physician is not required in ERISA cases. Nord, 538 U.S. at 829-31, 834 (holding the "treating physician

rule" is not required by ERISA). Since conflicting medical reports existed and there is no treating physician rule, Hartford's EAR was not deficient for using a peer reviewer's set of restrictions and limitations rather than the treating physician's set. Hence, the court finds that Hartford did not abuse its discretion by utilizing the peer reviewer's restrictions and limitations.

### 3. Inappropriate Reliance on a Statement by Tortora's Treating Physician

Third, Tortora argues that Hartford inappropriately relied upon a statement by his treating physician that was signed using the treating physician's signature stamp, while ignoring the treating physician's prior and subsequent statements. (Pl. Mem. Supp. J. 22-25, ECF No. 26.) Hartford, upon receipt of its first independent peer reviewer's report, forwarded the report to Tortora's treating physician for review and asked whether he concurred with the report's opinions. (Def. Mem. Supp. J. 10, ECF No. 27.) The report was not physically signed by Tortora's treating physician, but instead was stamped with the treating physician's signature that indicated he agreed with the report's opinions. (Pl. Mem. Supp. J. 23, ECF No. 26; J.S. Exs., ECF No. 24-10, AR 504.) Subsequently, after an office visit by Tortora who was allegedly upset due to the termination of his benefits, Tortora's treating physician issued more significant restrictions and limitations in a self-authored report. (Def. Reply 7-9, ECF No. 9.)

Contrary to Tortora's assertions, Hartford's process did consider all of the treating physician's files and reports, including the ones subsequent to the alleged inaccurate statement. Specifically, after Tortora's appeal, Hartford's second independent peer reviewer analyzed all of the treating physician's records and concluded that the restrictions and limitations the initial peer reviewer reported were appropriate. (J.S. Exs., ECF No. 24-1, AR 12-17.) Further, deference to

a treating physician is not required in ERISA cases. Nord, 538 U.S. at 829-31, 834. Hence, the court finds Hartford did not abuse its discretion on this issue.

### 4. Improper Termination Without Any Indication of Physical Improvement

Fourth, Tortora argues Hartford improperly terminated his benefits "despite his condition having degenerated" during his benefits period and "without any indication that his physical condition had recently improved" as of the date of termination. (Pl. Mem. Supp. J. 28-30, ECF No. 26.) To support this position, Tortora argues that the burden of proof is on Hartford as the plan administrator to demonstrate that his conditions have significantly improved in order to terminate his benefits. (Id. at 28, ECF No. 26.) However, the Policy explicitly authorizes Hartford to request proof of continuing disability. (J.S. Exs., ECF No. 24-20, AR 1469.) Further, in a very similar case, a South Carolina district court has held the standard of review remains abuse of discretion and the burden does not shift to Hartford to prove continuing disability, despite several years of paying benefits and the claimant arguing there was no evidence of a change in condition. Harley v. Int'l Paper Co. Long Term Disability Plan, 586 F. Supp. 2d 428, 442 (D.S.C. 2007). Based on the foregoing, the court finds Hartford did not abuse its discretion on the burden analysis.[3]

### 5. Conflict of Interest

Fifth, Tortora argues Hartford has a "significant" conflict of interest in this case, because the amount of monetary benefits at issue in this case suggests a significant conflict and because there is "no indication in the record that Hartford's claims examiners were in any way sheltered"

---

[3] Hartford further contends that there was evidence of improvement. However, for purposes of analysis on this argument, the court need not consider the evidence here. The court will discuss below whether this evidence was adequate or substantial.

from this conflict. (Pl. Mem. Supp. J. 31, ECF No. 26.) Regarding Tortora's first argument, judging the amount of monetary benefits involved is not the test for assessing a plan administrator's conflict of interest. If that were the case, nearly every termination would create a significant financial conflict. See Roberts v. Am. Elec. Power Long-Term Disability Plan, No. CIV. A. 3:07-0593, 2010 WL 2854299, at *8 (S.D. W. Va. July 19, 2010) (unpublished) ("Plaintiff claims simply, that Aetna is conflicted as a result of the fact that it participates in a competitive market and receives compensation for its services. As this must be the situation for nearly every independent claims administrator, the Court cannot conclude that [the plan administrator's] role creates a significant degree of conflict.").

Instead, the United States Supreme Court has held that a conflict should "prove more important . . . where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008). Further, it should "prove less important . . . where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." Id. There are no allegations that Hartford has a history of biased claims administration. Further, there is no indication in the record whether Hartford's claim administrators are sheltered or not, but Hartford obtained and relied on evidence from external and independent peer reviewers. Absent any other evidence, the court finds no abuse of discretion on this issue.

**6. Failure to Obtain a Completed FCE or IME**

Lastly, Tortora argues Hartford "wholly ignored" the fact that he could not physically perform or conclude an FCE, and moreover, Hartford failed to request a less strenuous IME. (Pl. Mem. Supp. J. 21-22, 25-28, 30-1, ECF No. 26.)  Under the third Champion factor, a court must evaluate the adequacy of the materials the administrator considered to make its decision. Champion, 550 F.3d at 359.  Under the sixth factor, a court must evaluate whether the decision was consistent with the procedural and substantive requirements of ERISA, including the requirement that a claimant is entitled to a "full and fair review" of any denied claim.  Id.; 29 U.S.C. § 1133(2).

Hartford alleges that by early 2013, the objective medical and administrative records reflected that Tortora's condition was improving.  (Def. Mem. Supp. J. 7, ECF No. 27.)  Thus, consistent with the Policy, Hartford initiated another review to determine whether Tortora remained disabled from performing any occupation as defined in the Policy.  Hartford ordered an FCE, which it alleges was scheduled for January 30, 2014.  (Id. at 9, ECF No. 27.)  On January 30, 2014, Tortora notified Hartford that the FCE would have to be postponed, because during his monthly exam the day before, he was informed that he needed a CT scan to "determine the cause of [his] chronic leg weakness, numbness and needling sensations in the bottom of [his] feet."  (J.S. Exs., ECF No. 24-11, AR 606.)  Hartford alleges it rescheduled the FCE for February 6, 2014, and that Tortora postponed this FCE as well.  (Def. Mem. Supp. J. 9, ECF No. 27.)  However, the only evidence in the record of a rescheduled FCE, is a bill dated February 6, 2014, for a cancelled FCE appointment; however, it is unclear from the document whether this bill was for the first FCE or for the alleged rescheduled FCE.  (J.S. Exs., ECF No.

24-11, AR 604.) Regardless, it appears Tortora may not have been able to participate in an FCE on February 6, 2014, because his CT scan was not complete until March 2014. (Id. Exs., ECF No. 24-11, AR 602.) Hartford alleges that it discontinued its efforts to obtain an FCE "given Tortora's reluctance to attend." (Def. Mem. Supp. J. 9, ECF No. 27.) Hartford later terminated Tortora's LTD benefits on October 2, 2014, based on the record, including: (1) office notes and medical records from Tortora's treating medical facility; (2) an independent physician peer review report; (3) a letter response from Tortora's treating physician; (4) Tortora's self-reported education, training, and experience; and (5) the EAR completed by Hartford's Vocational Rehabilitation Clinical Case Manager. (J.S. Exs., ECF No. 24-16, AR 1147.)

Tortora appealed the termination decision with Hartford. Again, Hartford sought and received a prescription for Tortora to undergo an FCE, which Tortora's treating physician recommended. (Id. Exs., ECF No. 24-17, AR 1288 and ECF No. 24-16, AR 1130.) On May 12, 2015, Tortora started the FCE, but was unable to complete the examination. (Id. Exs., ECF No. 24-1, AR 49.) During the initial phases of the FCE, Tortora's "resting heart rate and blood pressure were noted to be high," and after two hours of grip testing and musculoskeletal screening, his heart rate and blood pressure "remained too high to continue with the [FCE]." (Id. Exs., ECF No. 24-1, AR 49.) There is evidence Tortora showed up "very late" to this FCE, but nevertheless, the FCE was still commenced and Tortora also stated "he had taken his medications."[4] (Id. Exs., ECF No. 24-1, AR 51 and ECF No. 24-16, AR 1130.) Another FCE could not be conducted without further medical clearance, so Hartford sought and obtained

---

[4] Tortora alleges these medications were "maintenance medications, including blood pressure medicine." (Pl. Reply 10, ECF No. 32.)

another FCE prescription from Tortora's treating physician. (J.S. Exs., ECF No. 24-1, AR 49, 43.) On May 28, 2015, Hartford instructed the medical facility that conducted the incomplete FCE to schedule another FCE. (Id. Exs., ECF No. 24-1, AR 36.) Another FCE was never conducted. Further, Hartford did not obtain an IME, a less strenuous examination. Instead, Hartford obtained another independent physician peer review report, and later affirmed its termination decision of Tortora's LTD benefits on June 10, 2015. (Id. Exs., ECF No. 24-16, AR 1129.) In its letter to Tortora affirming its termination decision, Hartford stated it discontinued its efforts to obtain a completed FCE or any other "independent assessment" of functionality "based on the claim history of unsuccessful attempts to measure Mr. Tortora's level of functionality." (Id. Exs., ECF No. 24-16, AR 1130.) However, in its memorandum in support of judgment, Hartford claims it declined pursuing a second FCE, because it "could not be assured that [Tortora] would take his blood pressure medication on the day of a rescheduled FCE, and that an unknown physician stated his blood pressure and pulse readings were due to a 'psych' response to testing and possible pain." (Def. Mem. Supp. J. 13, ECF No. 27.)

The court finds that the administrative record as a whole is inadequate to conduct a meaningful review, because of Hartford's failure to obtain a completed FCE or, in the alternative, a less strenuous IME. Hartford argues that it was not required to obtain a completed FCE or IME. (Def. Reply 5, ECF No. 31.) In support of this position, Hartford points to the Policy language that states Hartford "may have [a claimant] examined to determine if [the claimant] [is] Disabled," and notes that nothing in the language of the Policy required Hartford to obtain a completed FCE or IME. (Id., ECF No. 31.) Further, Hartford cites to Fourth Circuit precedent that "a plan administrator has no duty to develop evidence that a claimant is not

disabled prior to denying benefits" and that there is no requirement "to seek out IME evidence as a condition to its denial" of a claim. Piepenhagen v. Old Dominion Freight Line, Inc., No. 09-1248, 2010 WL 3623225, at *7-8 (4th Cir. Sept. 16, 2010) (unpublished); see also Elliott, 190 F.3d at 609 (holding a plan administrator "is not required . . . to secure specific [evidence], especially where the record already contains ample and reliable medical documentation").

The court recognizes that nothing in the Policy language requires Hartford to conduct an FCE or IME, and the Policy does not expressly bar a file review by an independent peer physician in lieu of an FCE or IME. However, other courts have found that "the failure to conduct a physical examination – especially where the right to do so is specifically reserved in the plan – may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." Calvert v. Firstar Fin., Inc., 409 F.3d 286, 295 (6th Cir. 2005); Kurth v. Hartford Life & Acc. Ins. Co., 845 F. Supp. 2d 1087, 1100 (C.D. Cal. 2012). In Calvert, a plan administrator's independent peer reviewer issued an "inconsistent," "incredible," and non-thorough file review. Calvert, 409 F.3d at 296-97. In Kurth, a plan administrator did not conduct an in-person evaluation to verify the treating physician's "permanently disabled" diagnosis or address the "lingering questions regarding [a claimant's] functionality." Kurth, 845 F. Supp. 2d at 1099-1100. Further, another district court within the Fourth Circuit has also held the failure to obtain an FCE – when the record indicated the results of which would have been relevant if not necessary in evaluating the claim – was sufficient to order a remand to obtain a completed FCE. Hill v. Hartford Life & Acc. Ins. Co., 743 F. Supp. 2d 569, 574-75 (W.D. Va. 2010).

In the case at bar, Hartford similarly relies on two independent peer medical file reviews that are inconsistent with the treating physician's diagnosis and Hartford failed to conduct an FCE or IME to address the relevant and lingering questions regarding Tortora's functionality. While it is not an abuse of discretion to deny benefits when conflicting medical reports exist, Elliot, 190 F.3d at 606, there is a requirement for there to be adequate materials and substantial evidence upon which the benefits decision must rely, Champion, 550 F.3d at 359, Bernstein, 70 F.3d at 788. Based on Hartford's failure to properly evaluate Tortora's functionality, the court finds that substantial evidence did not exist and a more deliberate and principled reasoning process should have been conducted in order to obtain adequate materials for several reasons.

First, Hartford readily admits it attempted multiple FCEs and that Tortora's treating physician recommended and prescribed another FCE after the unfinished FCE due to Tortora's heart rate and blood pressure complications. (Def. Reply 10, ECF No. 31.) Clearly, Hartford felt an FCE would have been relevant and beneficial, or it would not have attempted one in the first place. Further, its failure to follow the treating physician's recommendation, especially after it initially attempted to reschedule the FCE, weighs in favor of finding the record inadequate. Hill, 743 F. Supp. 2d at 573-75 (remanding to complete an FCE after the plan administrator stated an FCE was necessary and although one was prescribed, it was never actually performed). Second, Hartford almost exclusively relied on independent peer medical file reviews from non-treating physicians who had not physically examined Tortora, while discounting the treating physician's restrictions and limitations who had physically examined Tortora, which also weighs against the adequacy of the record. See, e.g., Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 320 (4th Cir. 2008) (placing greater emphasis on

15

reviewing physicians who had physically examined the claimant).  Third, it does not appear from the record that Hartford explicitly considered the fact that Tortora could not physically complete an FCE in reaching its ultimate decision.

Moreover, even if an FCE could not have been completed, Hartford's failure to request a less strenuous IME favors remanding as well.  Numerous other district courts have found a failure to pursue an IME is a factor weighing in favor of finding an abuse of discretion.  See, e.g., Granville v. Aetna Life Ins. Co., No. 3:14-CV-00211, 2015 WL 9026025, at *7 (M.D. Pa. Dec. 15, 2015) (unpublished) (finding the failure to conduct an IME, in a case in which "great stock" was placed on a independent peer doctor's paper review, was a factor in holding an abuse of discretion existed); Arnsperger v. Boeing Co. Employee Ben. Plan, No. 6:11-CV-06293-AA, 2013 WL 550561, at *6 (D. Or. Feb. 5, 2013) (unpublished) (finding the failure to conduct an IME, in a case in which the administrator only commissioned record reviews, was a factor in holding an abuse of discretion existed); Bencivenga v. Unum Life Ins. Co. of Am., No. 14-10118, 2015 WL 1439697, at *9 (E.D. Mich. Mar. 27, 2015) (unpublished); Holt v. Life Ins. Co. of N. Am., No. 1:13-CV-339, 2015 WL 1243529, at *5 (E.D. Tenn. Mar. 18, 2015) (unpublished).  Further, the failure to request an IME is especially deficient since Hartford failed to adequately explain why an FCE, much less an IME, was unnecessary; while Hartford stated in the denial letter that it discontinued its efforts to obtain an FCE because of the history of unsuccessful attempts, this explanation is inadequate and is in direct contrast to the other unreasonable and conflicting rationales provided in its filings for this case.  See Hill, 743 F. Supp. 2d at 572-75 (remanding to complete an FCE after there was "confusion in the record regarding why [an] FCE was not performed").

16

Ultimately, the "administrative record before Hartford at the time it denied benefits to [Tortora] was inadequate to allow this court to conduct a meaningful review of the decision," and "the efforts made on appeal were insufficient to clarify [Tortora's] disability status." Id. at 574. Based on the foregoing, the court remands the case to Hartford for further consideration. Further, the court denies Tortora's request that the court award retroactive benefits and attorneys' fees pending remand.

It is therefore

**ORDERED** that Hartford's decision denying Tortora LTD benefits is remanded for a "full and fair review" as set forth above.

**IT IS SO ORDERED**.

                s/Henry M. Herlong, Jr.
                Senior United States District Judge

Greenville, South Carolina
February 8, 2016